```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

NeighborCare of
New Hampshire, LLC, d/b/a
Omnicare of New Hampshire

    v.

                                   Civil No. 13-cv-014-SM

New Hope Healthcare
Systems-Bedford, LLC,
d/b/a Laurel Center


**REPORT AND RECOMMENDATION**

    NeighborCare of New Hampshire, LLC ("Omnicare"), has sued New Hope Healthcare Systems-Bedford, LLC ("New Hope"), for, among other things, breaching two contracts. New Hope has defaulted. See doc. no. 7. Before me for a report and recommendation is Omnicare's motion for default judgment and damages. On June 26, 2013, I held a hearing on damages, and directed Omnicare to file additional documentation in support of its request for attorney's fees. That documentation has been submitted. For the reasons that follow, I recommend that Omnicare's motion for default judgment be granted in part.

**The Legal Standard**

    Because default has been entered against it, New Hope is "taken to have conceded the truth of the factual allegations in

the complaint as establishing the grounds for liability." S.E.C. v. New Futures Trading Int'l Corp., No. 11-cv-532-JL, 2012 WL 1378558, at *1 (D.N.H. Apr. 20, 2012) (quoting Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002)). However, "[t]he entry of a default does not compel the granting of a default judgment." Weiss v. GB Mortg., LLC (In re D'Alessandro), Adversary No. 11-4089, 2013 WL 1385745, at *4 (Bankr. D. Mass. Apr. 4, 2013). Rather, default judgment may be granted only if "[t]he claimant [] state[s] a legally valid claim for relief." United States v. Simoneau, No. 12-cv-348-JL, 2012 WL 6917071, at *1 (D.N.H. Dec. 20, 2012) (quoting 10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2011)). That is, "[a] court may grant judgment by default only for relief that may lawfully be granted on the well-pleaded facts alleged by the claimant." 10 Moore's, supra § 55.32[1][b] (emphasis added).

**Background**

New Hope operates a nursing facility known as Laurel Center. In connection therewith, it entered into two agreements with Omnicare, a Pharmacy Services Provider Agreement ("Services Agreement") and a Pharmacy Consultant Agreement ("Consultant Agreement").

Under the Services Agreement, Omnicare "agreed to provide certain pharmacy-related products and services to the residents of [New Hope]'s facility, the Laurel Center." Compl. (doc. no. 1) ¶ 7. Moreover, the parties agreed that Omnicare would submit monthly invoices for the products and services it provided, and that New Hope, after receiving each monthly invoice, would pay in full within thirty days. See id. ¶ 10. At the time Omnicare filed suit, New Hope had failed to pay for at least $356,225.10 worth of goods and services provided by Omnicare under the Services Agreement. See id. ¶ 20. The parties also agreed to a "late charge" of 1.5 percent per month on any outstanding balance due under the Services Agreement.[1]  See id. ¶ 11. Finally, the Services Agreement entitles the "substantially prevailing party . . . to recover its court costs and reasonable attorneys' fees" in the event that it is forced to bring an action against the other party "to enforce any condition or covenant of [the] [Services] Agreement." Id. ¶ 12 (internal quotation marks omitted).

Under the Consultant Agreement, Omnicare agreed to provide certain "pharmacy consultant services" to New Hope. Compl.

---

[1] In its pleadings, Omnicare tends to refer to the money owing on the unpaid invoices as "principal" and to the late charges as "interest."

(doc. no. 1) ¶ 13.  That agreement required New Hope to pay Omnicare within thirty days of receiving an invoice, see id. ¶ 15, and to pay a late charge of 1.5 percent per month, see id. ¶ 16.  It also includes a provision for attorneys' fees, see id. ¶ 17.  At the time Omnicare filed suit, New Hope had failed to pay for at least $23,010.93 worth of services provided under the Consultant Agreement.  See id. ¶ 26.

Count I of Omnicare's complaint is a claim that New Hope breached the Services Agreement and is liable for damages "including, but not limited to, outstanding principal, interest, attorneys' fees, lost profits, and costs."  Id. ¶ 24.  Count II is a claim that New Hope breached the Consultant Agreement and is liable for damages "including, but not limited to, outstanding principal, interest, attorneys' fees, lost profits, and costs."  Id. ¶ 30.

## Discussion

In its motion for default judgment, Omnicare seeks: (1) $356,260.88 in unpaid principal owed under the Services Agreement, see doc. no. 9 ¶ 4; (2) $124,752 in interest on that amount, see id.; (3) $25,311.23 in unpaid principal owed under the Consultant Agreement, see id. ¶ 5; (4) $8,307.50 in attorneys' fees, see id. ¶ 7; (5) $571.60 in costs, see id.; and

(6) prejudgment interest, see id. at 3.  I begin with the Consultant Agreement and then turn to the Services Agreement.

A. Consultant Agreement

In a section of the Consultant Agreement titled "Choice of Law, Choice of Venue, Waiver of Certain Defenses, Service of Process, and Attorneys' Fees," Omnicare and New Hope

> stipulate[d] and agree[d] that the state and federal courts of the State of Delaware shall have exclusive jurisdiction over any dispute or controversy between the parties arising under or relating to this Agreement, to the exclusion of any and all other possible venues . . . .

Mot. for Default J., Billman Aff., Ex. 2 (doc. no. 9-3), at 8. Before I can consider the effect, if any, of that forum-selection clause on the claim for breach of contract stated in Count II, I must address a procedural issue.

As noted above, default judgment is only available when a plaintiff states a legally valid claim for relief.  See Simoneau, 2012 WL 6917071, at *1.  That is the same standard a plaintiff must meet to defeat a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 241 n.16 (1st Cir. 2013) (describing establishment of "legal sufficiency" of claims as "the core of [a plaintiff's] burden under Rule 12(b)(6)").

Thus, if a plaintiff were to sue a defendant for breach of contract based solely upon conduct that did not violate any of the terms of the contract, that claim could neither survive a motion to dismiss under Rule 12(b)(6) nor support a grant of default judgment, even if the defendant has defaulted.

"In this circuit, [courts] treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing Silva v. Encyc. Brit., Inc., 239 F.3d 385, 387 & n.3 (1st Cir. 2001)).[2]  Accordingly, as a part of its obligation to determine whether a plaintiff has stated a legally valid claim for breach of contract, a court ruling on a motion for default judgment must also consider the effect of any forum-selection clause in the contract on which the plaintiff

---

[2] In some other circuits, motions to dismiss based on forum-selection clauses "are most properly brought under Rule 12(b)(3)." Rivera, 575 F.3d at 15 (citing Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289-90 (11th Cir. 1998)).  In those circuits, the existence of a forum-selection clause favorable to a defendant is a defense that is subject to waiver under Rule 12(h)(1).  See Williams v. Lakin, No. 06-CV-0515-CVE-PJC, 2007 WL 2114649, at *4 (N.D. Okla. July 20, 2007) (citing Williams v. Life Sav. & Loan, 802 F.2d 1200, 1202 (10th Cir. 1986)).  But where, as in the First Circuit, a forum-selection clause creates a Rule 12(b)(6) problem rather than a Rule 12(b)(3) problem, improper venue based upon a forum-selection clause would not appear to be subject to waiver.

has sued.  Accordingly, I turn to the effect of the forum-selection clause in the Consultant Agreement.

As a preliminary matter, the court of appeals for this circuit has yet to resolve "the unsettled issue of whether 'forum selection clauses are to be treated as substantive or procedural for Erie purposes.'"  Rivera, 575 F.3d at 16 (quoting Lambert v. Kysar, 983 F.2d 1110, 1116 & n.10 (1st Cir. 1993); citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)); see also Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 92 (1st Cir. 2010) ("[t]he Erie question has been reserved by the Supreme Court . . . and by this court") (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 26-26, 32 & n.11 (1988); Rivera, 575 F.3d at 16-17).  That lack of resolution is of no moment here, as neither federal nor state law would pose an obstacle to enforcing the forum-selection clause in the Consultant Agreement.

Under the federal common law, "[i]t is well established that forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  Rivera, 575 F.3d at 18 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); citing Silva, 239 F.3d at 386) (internal quotation marks omitted).  As for state law, "New Hampshire has, by statute,

7

sanctioned the enforcement of forum selection clauses provided that the parties have agreed in writing that an action shall be brought only in another state." Fog Motorsports #3, Inc. v. Arctic Cat Sales, Inc., 159 N.H. 266, 268 (2009) (quoting Strafford Tech., Inc. v. Camcar Div. of Textron, Inc., 147 N.H. 174, 176 (2001); citing RSA 508-A:3).

Here, the Consultant Agreement includes a mandatory forum-selection clause. See Rivera, 575 F.3d at 17 ("mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum") (quoting 14D Charles Alan Wright, et al., Federal Practice & Procedure § 3803.1 (3d ed. 1998)); Strafford Tech., 147 N.H. at 175-77 (holding that forum-selection clause requiring "that any controversy arising under this Order shall be determined by the courts of Illinois" was mandatory) (brackets and emphasis omitted). There is nothing in the facts alleged in Omnicare's complaint or in the Consultant Agreement's forum-selection clause that would make it unreasonable under the circumstances of this case for the court to enforce that clause, see Rivera, 575 F.3d at 18, and there is nothing in the complaint or the forum-selection clause that would compel the court to conclude that enforcement of that clause would run afoul of RSA 508-A:3.

Given the presence of an enforceable forum-selection clause that requires Omnicare and New Hope to litigate claims for breach of the Consultant Agreement in Delaware, I conclude that Count II fails to state a legally valid claim for relief.  Cf. Nauert v. Nava Leisure USA, Inc., 211 F.3d 1278, 2000 WL 381509 (10th Cir. 2000) (unpublished table decision) (noting that district court granted motion to vacate default judgment where plaintiff sued on contract with forum selection provision that required litigation elsewhere); Aiyegbusi v. Knight, Civ. Action No. 07-2766, 2008 WL 370619, at *3 (E.D. Pa. Feb. 7, 2008) (concluding that "improper venue [based on contractual forum-selection clause] serve[d] as a meritorious defense and thus support[ed] vacating [a] default judgment").  Because Count II does not state a legally valid claim for breach of the Consultant Agreement, due to the mandatory forum-selection clause, Omnicare is not entitled to default judgment on Count II.

B. Services Agreement

Omnicare is, however, entitled to default judgment on the claim for breach of contract stated in Count I.  Under New Hampshire common law, "[a] breach of contract occurs when there is a failure without legal excuse[ ] to perform any promise which forms the whole or part of a contract."  Lassonde v.

9

Stanton, 157 N.H. 582, 588 (2008) (citing Poland v. Twomey, 156 N.H. 412, 415 (2007)). Based upon the facts alleged in the complaint, New Hope failed without legal excuse to pay for at least $356,225.10 worth of goods and services that Omnicare provided to it under the Services Agreement. That is, Omnicare has stated a legally valid claim for breach of contract.

As for damages, which "must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c), Omnicare is entitled to: (1) $356,260.88 that New Hope owes on unpaid invoices submitted under the Services Agreement; and (2) $124,752 in late charges.

Omnicare also requests $8,307.50 in attorney's fees. "Where, as here, the court's jurisdiction is based on diversity of the parties, a district court's award of attorneys' fees is governed by relevant state law." IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 451 (1st Cir. 2010) (citing B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 516 F.3d 18, 28 (1st Cir. 2008)). In New Hampshire, "[a] prevailing party may be awarded attorney's fees when recovery of fees is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees." In re Mason, 164 N.H. 391, 398 (2012) (citing Kessler v. Gleich, 161 N.H. 104, 106 (2010)) (emphasis added). Under the

10

Services Agreement, Omnicare and New Hope agreed that the "substantially prevailing party" in an action to enforce the Services Agreement "shall be entitled to recover [the] court costs and reasonable attorneys' fees [it] incurred in such action." Mot. for Default J., Billman Aff., Ex. 1 (doc. no. 9-2), at 8.

Like the Services Agreement, New Hampshire jurisprudence recognizes that an award of attorney's fees must be reasonable. See In re Estate of Rolfe, 136 N.H. 294, 299-300 (1992) (citing Couture v. Mammoth Groceries, Inc., 117 N.H. 294, 296 (1977)). Courts assess reasonableness by evaluating the requested fee against the backdrop of Rule 1.5(a) of the New Hampshire Rules of Professional Conduct, and the following non-exclusive list of factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly.
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) the fee customarily charged in the locality for similar legal services.
>
> (4) the amount involved and the results obtained.
>
> (5) the time limitations imposed by the client or by the circumstances.

>    (6) the nature and length of the professional relationship with the client.
>
>    (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
>    (8) whether the fee is fixed or contingent.

Estate of Rolfe, 136 N.H. at 299 (quoting N.H. R. Prof'l Conduct 1.5(a)).

Turning to the first factor, this case did not involve any particularly novel or difficult legal questions, and it is evident from the billing records that Omnicare's counsel did not overwork the file. As for the fourth factor, the amount involved and the results obtained, Omnicare's counsel has billed less than $9,000 for an effort that has resulted in an award of nearly half a million dollars, a cost-to-recovery ratio that can only be considered commendable. Given the efficacy of counsel's efforts, its imposition of a fixed fee rather than a contingent fee supports the reasonableness of awarding Omnicare the full amount it seeks. At the June 26, 2013, damages hearing, I asked Omnicare to provide supplemental information addressing the issues covered by the third and seventh Rolfe factors. Omnicare's supplemental memorandum demonstrates the reasonableness of its request. Both Attorney Scheer and Attorney Mattson are experienced lawyers. Their rates of $250 and $195 per hour respectively are reasonable. This is

corroborated by Attorney Meyer, an experienced litigator from a different law firm in New Hampshire. To sum up, when weighed against the eight Rolfe factors, the attorney's fees Omnicare requests are reasonable. I recommend awarding Omnicare the full amount it requests.

Finally, Omnicare requests prejudgment interest in the amount of 2.1 percent annually. "State law applies to an award of prejudgment interest in diversity suits." Healy v. Franklin Elec. Co., No. 08-cv-503-PB, 2011 WL 32522, at *2 (D.N.H. Jan. 5, 2011) (citing Com'l Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 772 (1st Cir. 1994)). Under New Hampshire law, in civil actions such as this one, when "a finding is made for pecuniary damages . . . there shall be added forthwith by the clerk of court to the amount of damages interest thereon from the date of the writ or the filing of the petition to the date of judgment." RSA 524:1-b. Should Judge McAuliffe approve this report and recommendation, the clerk's entry of judgment shall include the language customarily used in final judgments to effectuate the requirements of RSA 524:1-b.

## Conclusion

For the foregoing reasons, I recommend that Judge McAuliffe: (1) grant default judgment to Omnicare on Count I;

and (2) award Omnicare $481,012.88 in damages, $8,307.50 in attorney's fees, and $571.60 in costs.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya B. McCafferty
United States Magistrate Judge

August 26, 2013

cc: Joseph Gardner Mattson, Esq.